UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| CHARLES LEE DEWEY, III,<br><br>Plaintiff,<br><br>v.<br><br>TROY HERSHBERGER, ALLEN CNTY BOARD OF COMMISSIONERS, and WARDEN,<br><br>Defendants. | CAUSE NO. 1:24-CV-508-PPS-AZ |

## OPINION AND ORDER

Charles Lee Dewey, III, a prisoner without a lawyer, filed a complaint about the conditions of confinement at the Allen County Jail and his ability to practice his religion when he was confined there from March 4, 2024, through November 18, 2024. [ECF 1.] "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, I must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

### Conditions of Confinement

Dewey was held in the Allen County Jail for eight months. He says that during that time, he dealt with medically inadequate food, "unwholesome" food, inadequate

recreation, inadequate bedding, inadequate sanitation, and increased violence. [ECF 1 at 2.] Dewey was a pretrial detainee when he entered the jail on March 4, 2024, but his status changed on September 6, 2024, when he was sentenced on one of his criminal cases. *State v. Dewey*, No. 02D05-2012-F1-000024 (Allen Super. Ct. decided Sept. 6, 2024). Therefore, both Fourteenth and Eighth Amendment standards apply to this case at different points. *See Miranda v. Cnty. of Lake*, 900 F.3d 335, 352 (7th Cir. 2018). But for simplicity, I will analyze the claims under the Fourteenth Amendment because it is an easier standard for a plaintiff to satisfy.

As a pretrial detainee, Dewey is protected under the Fourteenth Amendment from being held in "conditions that 'amount to punishment.'" *Mulvania v. Sheriff of Rock Island Cnty.*, 850 F.3d 849, 856 (7th Cir. 2017) (quoting *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). Conditions may amount to punishment if, as a result, inmates are denied "the minimal civilized measure of life's necessities," which include "reasonably adequate ventilation, sanitation, bedding, hygienic materials, and utilities." *Hardeman v. Curran*, 933 F.3d 816, 820 (7th Cir. 2019) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981) and *Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016)). The Fourteenth Amendment also requires that pretrial detainees be reasonably protected from a substantial risk of serious harm. *Thomas v. Dart*, 39 F.4th 835, 841 (7th Cir. 2022).

To state a Fourteenth Amendment claim against an individual defendant, a pretrial detainee must allege the defendant "did not take reasonable available measures to abate the risk of serious harm to [plaintiff], even though reasonable officers under the circumstances would have understood the high degree of risk involved, making the

2

consequences of the defendants' conduct obvious." *Pittman ex rel. Hamilton v. Madison Cnty., Ill.*, 108 F.4th 561, 572 (7th Cir. 2024) (emphasis omitted). "A jail official's response to serious conditions of confinement is objectively unreasonable when it is 'not rationally related to a legitimate nonpunitive governmental purpose' or is 'excessive in relation to that purpose.'" *Mays v. Emanuele*, 853 F. App'x 25, 27 (7th Cir. 2021) (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015)). In determining whether an action or condition is reasonable or whether it amounts to punishment, I must consider the "totality of facts and circumstances." *Mays v. Dart*, 974 F.3d 810, 819 (7th Cir. 2020). Of note, "negligent conduct does not offend the Due Process Clause," and thus allegations of negligence, even gross negligence, do not state a Fourteenth Amendment claim. *Miranda*, 900 F.3d at 353.

First, Dewey alleges that he is gluten intolerant and "several times" he was served medically inadequate food, which caused him pain, digestive issues, and bloody stools as well as depression. [ECF 1 at 2.] He grieved this issue, but his food was almost never corrected. He alleges he was forced to choose between eating medically inadequate food or not eating. In addition, he says that sometimes food showed up cold, contaminated, or otherwise "unwholesome." [*Id.*]

Dewey does not raise a constitutional claim regarding the food he was served at the jail. The Fourteenth Amendment guarantees him life's necessities. But having a problem with food "several times" over an eight-month period does not plausibly allege that his overall diet was inadequate or threatened his health.

3

Dewey next complains that he was unable to get sufficient exercise. He says the inmates on his unit were let out of their cells each day for four hours, in two-hour time blocks, to use the dayroom. But he says the dayroom was too crowded to exercise in and the rules prohibit the inmates from running or playing in the dayroom. In addition, twice a week they received recreation, but he complains that the rec room was just an empty room with no activities or equipment, though a basketball was added in October 2024. This has caused him high stress levels, leading to stress headaches, loss of sleep, anxiety, and depression. He says that due to no vigorous exercise, he has suffered "physical unwellness." [ECF 1 at 2.]

Dewey has not alleged that the opportunities provided for physical activity at the Allen County Jail reached the level of a constitutional concern, which requires that the condition of confinement "posed an objectively serious threat to [his] health." *Mays*, 853 F. App'x at 26. Specifically, twice a week he had the opportunity for vigorous exercise during recreation, even if the conditions were not ideal. Then, in his daily time out of his cell, he does not allege that he was denied all ability to exercise, just that he could not exercise vigorously. *Cf. Smith v. Dart*, 803 F.3d 304, 313 (7th Cir. 2015) ("As the district court noted, there is a significant difference between a lack of outdoor recreation and an inability to exercise. Smith does not allege that his movements are restricted to the point that he is unable to exercise inside his cell or in jail common areas . . . . Accordingly, we agree with the district court that Smith's allegation that he 'can[']t go outside [for] recreation' fails to state a sufficiently serious constitutional deprivation." (alterations in original)). Dewey's allegation that these conditions caused him "physical

4

unwellness" is too vague to allow me to reasonably infer that he was harmed by these conditions.

Dewey alleges he did not receive "reasonably adequate bedding." [ECF 1 at 2.] He alleges the bedding caused him severe back pain and stress. He describes the bed mats as "thin" and "chintzy." [*Id.* at 3.] He asserts that, although the mats may be adequate for a short time, they are not adequate for long-term usage.

Pretrial detainees are entitled to reasonably adequate bedding as part of the minimal civilized measure of life's necessities guaranteed by the Fourteenth Amendment. But Dewey's complaints about the quality of the mattress do not trigger the Fourteenth Amendment. Courts have consistently held that uncomfortable mattresses do not violate the Constitution. *See Arringon v. Donathan*, No. 22-4081, 2022 WL 4466714, at *2 (C.D. Ill. Sept. 26, 2022) (requiring civil detainee who was 6 feet tall and 260 pounds to sleep on narrow bed was not a sufficiently serious condition under the Fourteenth Amendment); *Marshall v. Nickel*, No. 06-C-617-C, 2007 WL 5582139, at *9 (W.D. Wis. Jan. 29, 2007) ("The use of an uncomfortable mattress for several months is not sufficient to state a claim under the Eighth Amendment."), *on reconsideration in part*, No. 06-C-617, 2007 WL 5614091 (W.D. Wis. Mar. 12, 2007); *Jenkins v. Miller*, No. 17-cv-25-bbc, 2018 WL 6788527, at *9 (W.D. Wis. Dec. 26, 2018) (collecting cases) ("Even though courts have found that a lack of bedding for more than a week may qualify as the denial of a basic life necessity, they have not found that the constitutional protection applies to uncomfortable beds or mattresses." (citations omitted)). To come out differently here, Dewey needs to plausibly allege that the mattress "posed an

objectively serious risk of harm." *Roundtree v. Dart*, No. 23-2576, 2025 WL 401207, at *3 (7th Cir. Feb. 5, 2025). Back pain from an uncomfortable mattress does not reach this level.

Dewey alleges overcrowding and understaffing at the Allen County Jail has led to sanitation issues, such as stained beds, moldy air vents, flying/biting bugs coming from the shower, and scum growing in the toilets. He alleges that on March 8, 2024, he developed a rash from these conditions and experienced pain and irritation.

These conditions do not allow me to reasonably infer that the sanitation at the jail fell to a constitutionally significant level. The only harm Dewey alleges from these conditions is a one-time rash, but the link between the rash and the conditions alleged are not obvious and so he must provide a plausible basis for his belief that the rash was caused by the poor sanitation or bugs. A complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (quotation marks, citations, and footnote omitted). In addition, pest infestations, like the one alleged here, can become a constitutional violation if they present a substantial risk of harm to the inmate, by, for example, raising sanitation concerns or physically harming the inmate. But Dewey provides no detail about the extent of the infestation or its impact on him. *See, e.g., Smith*, 803 F.3d at 312 ("[A]lthough he alleged that mice and cockroaches are present in the jail, he did not allege facts from which one could infer that the degree of

6

infestation rose to the level of constitutional concern."). These sanitation issues do not state a claim for relief.

Dewey further alleges that overcrowding led to increased violence. He says that on July 10, 2024, he was attacked by an inmate, and on May 13, 2024, he was sexually assaulted by another, causing him physical and emotional trauma, anxiety, and depression.

The Fourteenth Amendment's protection includes the right to be protected from harm. To state a plausible claim for failure to protect, a plaintiff must allege:

> (1) the defendant made an intentional decision regarding the conditions of the plaintiff's confinement; (2) those conditions put the plaintiff at substantial risk of suffering serious harm; (3) the defendant did not take reasonable available measures to abate the risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved, making the consequences of the defendant's inaction obvious; and (4) the defendant, by not taking such measures, caused the plaintiff's injuries.

*Thomas*, 39 F.4th at 841.

Dewey does not identify any defendant who could be held liable for the attacks, which requires, at a minimum, that "a specific defendant was on notice of a serious risk of harm to the detainee." *Thomas*, 39 F.4th at 841 (citation and internal quotation marks omitted). Instead, it appears that Dewey is alleging that the attacks resulted from overcrowding at the Allen County Jail. However, he has not alleged any facts that show the Allen County Jail was unconstitutionally overcrowded from March 4, 2024, through November 18, 2024. Nor has he provided a reasonable basis to infer that overcrowding was a cause of the attacks. This claim may not proceed.

7

**Religion Claims**

Dewey alleges he was denied the ability to practice his religion, which he identified as "Norse Runes." [ECF 1 at 3.] Relatedly, he alleges the clock in his block was broken and the jail refused to fix it. As a result, he missed the official prayer time set by the chaplain.

Inmates retain their right under the First Amendment to practice their religion. *Kaufman v. McCaughtry*, 419 F.3d 678, 681 (7th Cir. 2005). "The Free Exercise Clause prohibits the state from imposing a substantial burden on a central religious belief or practice." *Kaufman v. Pugh*, 733 F.3d 692, 696 (7th Cir. 2013) (internal quotation marks and citations omitted). A substantial burden "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Thompson v. Holm*, 809 F.3d 376, 379 (7th Cir. 2016). However, a prison practice that imposes a substantial burden on the free exercise of religion may be justified if it is "reasonably related to a legitimate penological interest." *Id.* at 380. The Religious Land Use and Institutionalized Persons Act ("RLUIPA") offers broader protections than the First Amendment by prohibiting substantial burdens on an inmate's religious exercise unless that burden serves a "compelling governmental interest" and is "the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a); *see also Cutter v. Wilkinson*, 544 U.S. 709 (2005).

Dewey has not sufficiently explained how the broken clock placed a substantial burden on his religious practice. He does not detail what his religious practice entails,

8

the significance of the official prayer time, and why he did not have alternative ways of knowing the time.

Dewey also complains that the jail would not provide him with the books he needed to practice his Norse religion, even though Christian inmates can have a Bible and Jewish inmates can have a Torah. Neither the First Amendment nor RLUIPA require the jail to purchase him religious books. *See Cutter*, 544 U.S. at 720 n.8 (RLUIPA is "[d]irected at obstructions institutional arrangements place on religious observances" and "does not require a State to pay for an inmate's devotional accessories."). The Establishment Clause, however, requires the jail to treat all religions equally, "except to the extent required by the exigencies of prison administration." *Johnson-Bey v. Lane*, 863 F.2d 1308, 1312 (7th Cir. 1988); *see also Larson v. Valente*, 456 U.S. 228, 252 (1982) ("[T]he *Lemon v. Kurtzman* 'tests' [abandoned in *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 510 (2022)] are intended to apply to laws affording a uniform benefit to *all* religions, and not to provisions . . . that discriminate *among* religions.").

Dewey's allegations do not identify any differential treatment on the part of the jail. Dewey alleges that Christian and Jewish inmates were allowed to possess their religion's holy book, but he does not say how those inmates obtained those books. If the jail did not purchase those books, it is not obligated to purchase religious books for Dewey. He has not alleged any differential treatment.

This complaint does not state a claim for which relief can be granted. If Dewey believes he can state a claim based on (and consistent with) the events described in this complaint, he may file an amended complaint because "[t]he usual standard in civil

9

cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). To file an amended complaint, he needs to write this cause number on a **Pro Se 14 (INND Rev. 2/20) Prisoner Complaint** form which is available from his law library. He needs to write the word "Amended" on the first page above the title "Prisoner Complaint" and send it to the court after he properly completes the form.

For these reasons, the court:

(1) GRANTS Charles Lee Dewey, III until **April 25, 2025**, to file an amended complaint; and

(2) CAUTIONS Charles Lee Dewey, III if he does not respond by the deadline, this case will be dismissed under 28 U.S.C. § 1915A without further notice because the current complaint does not state a claim for which relief can be granted.

SO ORDERED on March 26, 2025.

/s/ Philip P. Simon  
JUDGE  
UNITED STATES DISTRICT COURT