UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| CHARLES LEE DEWEY, III, <br><br> Plaintiff, <br><br> v. <br><br> TROY HERSHBERGER, ALLEN CNTY BOARD OF COMMISSIONERS, and WARDEN, <br><br> Defendants. | CAUSE NO. 1:24-CV-508-PPS-AZ |

OPINION AND ORDER

Charles Lee Dewey, III, a prisoner without a lawyer, filed an amended complaint about the conditions he faced while he was held at the Allen County Jail. ECF 22. He also complains about obstacles he faced when trying to practice his religion. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, I must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

**CONDITIONS OF CONFINEMENT**

Dewey was a pretrial detainee when he entered the jail on March 4, 2024, but his status changed on September 6, 2024, when he was sentenced on one of his criminal

cases. *State v. Dewey*, No. 02D05-2012-F1-000024 (Allen Super. Ct. decided Sept. 6, 2024). Before he was sentenced, he fell under the protection of Fourteenth Amendment. *See Miranda v. Cnty. of Lake*, 900 F.3d 335, 352 (7th Cir. 2018). After he was sentenced, that switched to the Eighth Amendment. *Id.* For simplicity, I will analyze the continuing claims that span both standards under the Fourteenth Amendment because it is an easier standard for a plaintiff to satisfy.

As a pretrial detainee, Dewey is protected under the Fourteenth Amendment from being held in "conditions that 'amount to punishment.'" *Mulvania v. Sheriff of Rock Island Cnty.*, 850 F.3d 849, 856 (7th Cir. 2017) (quoting *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). Conditions may amount to "punishment" if inmates are denied "the minimal civilized measure of life's necessities," which include "reasonably adequate ventilation, sanitation, bedding, hygienic materials, and utilities." *Hardeman v. Curran*, 933 F.3d 816, 820 (7th Cir. 2019) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981) and *Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016)). The Fourteenth Amendment also requires that pretrial detainees be reasonably protected from a substantial risk of serious harm. *Thomas v. Dart*, 39 F.4th 835, 841 (7th Cir. 2022).

To state a similar claim against an individual defendant, a pretrial detainee must allege the defendant "did not take reasonable available measures to abate the risk of serious harm to [plaintiff], even though reasonable officers under the circumstances would have understood the high degree of risk involved, making the consequences of the defendants' conduct obvious." *Pittman v. Madison Cnty.*, 108 F.4th 561, 572 (7th Cir. 2024) (emphasis omitted). "A jail official's response to serious conditions of confinement

2

is objectively unreasonable when it is 'not rationally related to a legitimate nonpunitive governmental purpose' or is 'excessive in relation to that purpose.'" *Mays v. Emanuele*, 853 F. App'x 25, 27 (7th Cir. 2021) (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015)). Even gross negligence by a correctional officer is not enough to meet that standard. *Miranda*, 900 F.3d at 353.

If a plaintiff is injured not by an individual defendant but by a policy, practice, or custom of the jail itself, he may proceed on a claim against the Sheriff in his official capacity. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). A claim under *Monell* "requires a plaintiff to show that he (1) suffered a deprivation of a federal right; (2) as a result of either an express municipal policy, widespread custom, or deliberate act of a decision-maker with final policymaking authority; which (3) was the proximate cause of his injury." *McFields v. Dart*, 982 F.3d 511, 516 (7th Cir. 2020) (quotation marks and ellipses omitted).

In the amended complaint, Dewey refers to the class action, *Morris v. Sheriff of Allen Cnty.*, No. 1:20-CV-34-DRL, 2022 WL 971098 (N.D. Ind. Mar. 31, 2022). In that case, the court certified a class of "all persons currently confined, or who would in the future be confined, in the Allen County Jail" under Federal Rule of Civil Procedure 23(b)(2) for injunctive and declaratory relief. *Id.* at *1. The court found at summary judgment that certain conditions of confinement at the jail violated the Eighth and Fourteenth Amendments to the Constitution: "The overcrowding problem at the jail—which in turn has spawned an increased risk of violence, unsanitary and dangerous conditions in cells, insufficient recreation, and classification difficulties—has deprived this class of

3

inmates 'the minimal civilized measure of life's necessities.'" *Id.* at *5 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). The court also entered a permanent injunction to address the overcrowding, lack of sufficient staffing and recreation, and inadequate supervision of prisoners, and the court continues to monitor the remediation of the unconstitutional conditions. *Id.* at *16–18. By the time Dewey had entered the jail on March 4, 2024, that case had closed. But it's also true that the court found at a later status hearing monitoring compliance with the injunction that the unconstitutional conditions persisted as of June 28, 2024. *See Morris*, No. 1:20-cv-34 at ECF 140. Therefore, for purposes of this screening order, I will assume the findings in *Morris* apply to Dewey's case as well. But to be clear, this does not preclude any defendant from arguing that the unconstitutional conditions identified in *Morris* no longer persisted during Dewey's detention.

So, I will assume the Allen County Jail was unconstitutionally crowded during the time that Dewey was there. Overcrowding, on its own, does not state a constitutional claim. *See Bell*, 441 U.S. at 542 ("While confining a given number of people in a given amount of space in such a manner as to cause them to endure genuine privations and hardship over an extended period of time might raise serious questions under the Due Process Clause as to whether those conditions amounted to punishment, nothing even approaching such hardship is shown by this record."). But overcrowding could lead to deprivations of essential food, medical care, or sanitation; cause an increase in violence; or result in other intolerable prison conditions. *Rhodes v. Chapman*, 452 U.S. 337, 348 (1981).

Here, the amended complaint alleges that due to the overcrowding, Dewey was allowed recreation only once a week, which deprived him of sufficient opportunities for exercise. He also alleges that the overcrowded conditions provided other inmates the opportunity to physically and sexually assault him. He may proceed on a claim against Sheriff Troy Hershberger in his official capacity for unconstitutional overcrowding that resulted in Dewey being denied sufficient opportunities for exercise and in him being assaulted.

Dewey also alleges problems with the delivery of his medical diet. He alleges he is gluten intolerant and he received medically inadequate meals that he couldn't eat at least once every day or two. He had to choose between not eating or eating food that would cause him severe pain and bloody stool. He alleges he lost a lot of blood every day and lost about 17% of his total body weight. Dewey has plausibly alleged a policy, practice, or custom at the Allen County Jail of an inadequate system for ensuring inmates consistently receive a medical diet. He may, therefore, proceed against Sheriff Hershberger in his official capacity for damages stemming from a policy or practice of not having an adequate system to provide inmates on a medical diet adequate food.

Dewey next complains about an infestation at the jail of flying, biting bugs. He says there were hundreds in the shower, making it impossible to shower without being bitten. The bugs also flew to his cell and lived in the sinks there. Dewey alleges he suffered multiple bites that developed a rash. These conditions allow a reasonable inference that the pest infestation presented a substantial risk of harm to Dewey. *See, e.g., Smith v. Dart,* 803 F.3d 304, 312 (7th Cir. 2015). However, he does not name a

defendant who could be held liable. Dewey is not suing any individual who is alleged to have known about the problem with the flying bugs but responded in a way that was objectively unreasonable. Nor are there allegations that connect the pest infestation to the overcrowding or any other jail policy or practice so as to state a claim against the Sheriff in his official capacity. This claim may not proceed.

Finally, Dewey complains about the mattresses the jail provided. He says that the Allen County Jail used a different type of mattress than any other jail he had been in. The mattresses, he continues, were so inadequate that he was often unable to sleep, and he would wake up with injuries so severe he could not exercise. He says that all the inmates on his blocks had similar experiences with the mattresses.

Pretrial detainees are entitled to reasonably adequate bedding as part of the minimal civilized measure of life's necessities guaranteed by the Fourteenth Amendment. But Dewey's complaints about the quality of the mattress do not trigger the Fourteenth Amendment. Courts have consistently held that uncomfortable mattresses do not violate the Constitution. *See Arringon v. Donathan*, No. 22-4081, 2022 WL 4466714, at *2 (C.D. Ill. Sept. 26, 2022) (requiring civil detainee who was 6 feet tall and 260 pounds to sleep on narrow bed was not a sufficiently serious condition under the Fourteenth Amendment); *Marshall v. Nickel*, No. 06-C-617-C, 2007 WL 5582139, at *9 (W.D. Wis. Jan. 29, 2007) ("The use of an uncomfortable mattress for several months is not sufficient to state a claim under the Eighth Amendment."), *on reconsideration in part,* No. 06-C-617, 2007 WL 5614091 (W.D. Wis. Mar. 12, 2007); *Jenkins v. Miller*, No. 17-CV-25-BBC, 2018 WL 6788527, at *9 (W.D. Wis. Dec. 26, 2018) (collecting cases) ("Even

though courts have found that a lack of bedding for more than a week may qualify as the denial of a basic life necessity, they have not found that the constitutional protection applies to uncomfortable beds or mattresses." (citations omitted)). Dewey alleges the mattresses are more than uncomfortable, but the circumstances here don't rise to the level of a constitutional concern.

In sum, Dewey may proceed against Sheriff Hershberger in his official capacity on claims relating to being denied sufficient opportunities for exercise and in him being assaulted as a result of the overcrowding, and a policy or practice of inadequate food delivery for inmates on medical diets. He does not allege a basis to hold the other defendants—the Allen County Jail Warden and the Allen County Board of Commissioners—liable.

**RELIGION**

Dewey alleges that he was prevented from practicing his religion, Norse Runes, at the Allen County Jail in two ways. First, he alleges his religious practice entails specific prayer times, which he couldn't observe because the clock on his unit was broken. His block was the only one without a clock, and he had no alternative way to tell time. The clock was not fixed even after several inmates filed grievances about it.

Prisoners have a right to exercise their religion under the Free Exercise Clause of the First Amendment. *Vinning-El v. Evans*, 657 F.3d 591, 592-93 (7th Cir. 2011). "The Free Exercise Clause prohibits the state from imposing a 'substantial burden' on a 'central religious belief or practice.'" *Kaufman v. Pugh*, 733 F.3d 692, 696 (7th Cir. 2013) (quoting *Kaufman v. McCaughtry*, 419 F.3d 678, 682-83 (7th Cir. 2005)). "A substantial burden puts

7

substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Thompson v. Holm*, 809 F.3d 376, 379 (7th Cir. 2016) (quotation marks and alterations omitted). However, although a prisoner is free to exercise his religion (subject to necessary limitations to maintain the jail's legitimate penological interests), "there is no constitutional entitlement to subsidy." *Lewis v. Sullivan*, 279 F.3d 526, 528 (7th Cir. 2002). This means the jail is not constitutionally required to provide him with the items needed to practice his religion. *See Childs v. Webster*, No. 22-CV-256-JDP, 2024 WL 1619345, at *8 (W.D. Wis. Apr. 15, 2024) (granting summary judgment to defendants on First Amendment claim regarding failure to provide inmates with correct prayer schedule for Ramadan because "[d]efendants didn't *prohibit* inmates from having prayer schedules; they just stopped giving inmates courtesy copies of the schedule after their mistake with the incorrect schedule.").

Here, Dewey's complaint about the broken clock does not state a First Amendment claim because the jail was not required to provide him the tools he needed to practice his religion, and he describes no efforts on his part to obtain a timepiece that the jail blocked. Further, Dewey has not alleged that any of the defendants were personally involved in the denial of a functioning clock in order to hold one of them individually liable. *See Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018) (personal involvement necessary for individual defendant to be held liable for damages under 42 U.S.C. § 1983).

The Religious Land Use and Institutionalized Persons Act ("RLUIPA") offers broader protections than the First Amendment by prohibiting substantial burdens on

8

"any exercise of religion [by an inmate], whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A); *see also Grayson v. Schuler*, 666 F.3d 450, 451 (7th Cir. 2012). To state a claim under RLUIPA, an inmate must plausibly allege that an aspect of his religious practice has been substantially burdened. *Kaufman*, 733 F.3d at 696. At a later stage, the burden will shift to the defendant to show that the challenged conduct is the least restrictive means of pursuing a compelling governmental interest. *Cutter v. Wilkinson*, 544 U.S. 709, 723 (2005); *Koger v. Bryan*, 523 F.3d 789, 796 (7th Cir. 2008). Although RLUIPA offers broader protections than the First Amendment, the act is "[d]irected at obstructions institutional arrangements place on religious observances, [it] does not require a State to pay for an inmate's devotional accessories." *Cutter*, 544 U.S. at 720 n.8. For the same reason as above, Dewey may not proceed under RLUIPA based on the broken clock.

Second, Dewey complains that the jail bought Bibles, but they would not buy him Norse Runes, showing differential treatment. The jail is not required to purchase the items necessary to practice his religion. *See Lewis*, 279 F.3d at 528; *Cutter*, 544 U.S. at 720 n.8. However, if the jail chose to purchase Bibles, but not the book required for Dewey's religion, the Establishment Clause comes into play. The Establishment Clause prohibits a defendant from treating members of some religious faiths more favorably than others without a legitimate secular reason. *Kaufman,* 419 F.3d at 683-84 (7th Cir. 2005). "Prisons cannot discriminate against a particular religion except to the extent required by the exigencies of prison administration." *Maddox v. Love*, 655 F.3d 709, 719–20 (7th Cir. 2011) (quotation marks omitted). Even so, the Establishment Clause "does

9

not require a prison to provide identical worship opportunities for every religious sect or group. A prison is required only to afford all prisoners reasonable opportunities to exercise their religious freedom." *Henderson v. Frank*, 190 F. App'x 507, 509 (7th Cir. 2006) (internal citations and quotation marks omitted).

Dewey has plausibly alleged differential treatment based on the jail allegedly buying Bibles but not Norse Runes. However, this claim may not proceed because Dewey doesn't identify a proper defendant. He doesn't allege the failure to buy Norse Runes was due to a policy or practice at the jail, nor does he identify an individual defendant who was personally involved in the decision not to buy Norse Runes.

For these reasons, the court:

(1) GRANTS Charles Lee Dewey, III leave to proceed against Sheriff Troy Hershberger in his official capacity for compensatory and punitive damages for unconstitutional overcrowding that resulted in Dewey being denied sufficient opportunities for exercise and in him being assaulted in violation of the Eighth and Fourteenth Amendments;

(2) GRANTS Charles Lee Dewey, III, leave to proceed against Sheriff Troy Hershberger in his official capacity for monetary damages for a policy, practice, or custom at the Allen County Jail of an inadequate system for providing inmates on a medical diet adequate food in violation of the Eighth and Fourteenth Amendments;

(3) DISMISSES all other claims;

(4) DISMISSES Allen Cnty Board of Commissioners and Warden;

10

(5) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Troy Hershberger at Allen County Jail, with a copy of this order and the complaint (ECF 22);

(6) ORDERS, under 42 U.S.C. § 1997e(g)(2), Sheriff Troy Hershberger, in his official capacity, to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on September 19, 2025.

/s/ Philip P. Simon  
JUDGE  
UNITED STATES DISTRICT COURT